UNITED STATES v. LENGYEL. SAME v. MORRIS. SAME v. GLANTZ.

(District Court, W. D. Pennsylvania. February 10, 1915.)

Nos. 13–15.

ALIENS ☞68—NATURALIZATION—DECLARATION OF INTENTION—DELAY IN APPLYING FOR CITIZENSHIP.

Naturalization Act June 29, 1906, c. 3592, 34 Stat. 596, § 4 (Comp. St. 1913, § 4352), requiring applicants for citizenship to declare their intention of becoming citizens, provided that no alien who, in conformity with the law in force at the date of his declaration, had declared his intention to become a citizen prior to that act, should be required to renew such declaration, and not less than two years nor more than seven years after the making of the declaration of intention, to make and file a petition for citizenship in writing signed by the applicant in his own handwriting, when construed in connection with the further provisions of that section that if he has filed his declaration before the passage of that act he shall not be required to sign his petition in his own handwriting, and that when an alien, who has declared his intention to become a citizen, dies before he is actually naturalized, his widow and minor children may be naturalized without any declaration of intention, section 8 (section 4364), providing that the requirement of that section that applicants for citizenship shall be able to speak the English language shall not apply to any alien who prior thereto declared his intention to become a citizen in conformity with the law in force at the date of the declaration, section 27 (section 4382), prescribing a form of declaration of intention, and Rev. St. § 2174 (Comp. St. 1913, § 4357), relative to the naturalization of alien seamen serving on merchant vessels of the United States, does not invalidate declarations of intention filed prior to the enactment of that act, though not made the basis of a petition for citizenship within seven years after the adoption thereof, especially in view of the property and other legal rights granted by the United States or by the several states to aliens who have declared their intention of becoming citizens.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

Separate suits by the United States against Stefan Lengyel, Joshua Morris, and August Glantz. Bill in each case dismissed.

E. Lowry Humes, U. S. Atty., of Pittsburgh, Pa., for complainant.

ORR, District Judge. In each of the above cases the United States has invoked the remedy provided in the fifteenth section of the act of June 29, 1906 (34 Stat. pt. 1, p. 596), entitled "An act * * * to provide for a uniform rule for the naturalization of aliens throughout the United States," and establishing the Bureau of Naturalization. That section makes it the duty of United States district attorneys, upon affidavits showing good cause, to institute proceedings in any court having jurisdiction to naturalize aliens in their respective judicial districts in which the naturalized citizens may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship, on the ground of fraud, or on the ground that such certificate of citizenship was illegally procured. There is no allegation of fraud in either of the bills in the above cases, and there is no intimation that any fraud was intended. The ground relied upon, therefore, in each case, is that the certificate was illegally procured.

Each of the defendants has answered, admitting the averments of fact contained in the bill to which the respective answer is made, except the averment (if averment it be, and not a conclusion of the pleader) that the certificate of citizenship held by the defendant was illegally procured. The cases were all presented to the court at the same time and each was heard upon bill and answer. The position of the government in each case is supported by the contention that the naturalization law, by its terms, renders invalid declarations of intention filed by aliens prior to the passage of the act, and which were not made the basis of petitions for citizenship within seven years from the date of the passage of the act. In other words, that the court was without power to issue a certificate of naturalization upon a petition based upon an original declaration of intention, and presented to the court more than seven years after the passage of the act, when the declaration of intention had been made prior to such act.

Each case is somewhat different. In the Lengyel case, the declaration of intention was dated March 13, 1905, and the petition for naturalization was filed on the 8th of May, 1914. In this case, also, the petition for citizenship was not signed by the applicant in his own handwriting, but by his mark, duly attested.

In the Morris case, the declaration of intention was made on the 11th day of September, 1906, and his petition for citizenship was filed on the 23d day of December, 1913.

In the Glantz case, the defendant relied upon the declaration of his father, which was made on January 9, 1886, when defendant was a minor, in which condition he was also at the date of his father's death on the 19th of September, 1889. The defendant's petition for naturalization was filed on the 30th of September, 1914.

The Naturalization Act of 1906 has been amended from time to time. Therefore, in considering the questions involved in this case, they will be dealt with having due regard to the act as amended. Turning to section 4 of the act, we find the following provisions in which, for purposes of emphasis, certain portions are italicized:

"First. He shall declare on oath before the clerk of any court authorized by this act to naturalize aliens, or his authorized deputy, in the district in

220 F.—46

which such alien resides, two years at least prior to his admission, and after he has reached the age of eighteen years, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject. And such declaration shall set forth the name, age, occupation, personal description, place of birth, last foreign residence and allegiance, the date of arrival, the name of the vessel, if any, in which he came to the United States, and the present place of residence in the United States of said alien: *Provided, however, that no alien who, in conformity with the law in force at the date of his declaration, has declared his intention to become a citizen of the United States shall be required to renew such declaration.*

"Second. *Not less than two years nor more than seven years after he has made such declaration of intention he shall make and file, in duplicate, a petition in writing, signed by the applicant in his own handwriting,* and duly verified, in which petiton such applicant shall state his full name, his place of residence (by street and number, if possible), his occupation, and, if possible, the date and place of his birth; the place from which he emigrated, and the date and place of his arrival in the United States, and, if he entered through a port, the name of the vessel on which he arrived; the time when and the place and name of the court where he declared his intention to become a citizen of the United States; if he is married, he shall state the name of his wife and, if possible, the country of her nativity and her place of residence at the time of filing his petition; and if he has children, the name, date, and place of birth and place of residence of each child living at the time of the filing of his petition: *Provided, that if he has filed his declaration before the passage of this act he shall not be required to sign the petition in his own handwriting.* * * *

"Sixth. *When any alien who has declared his intention to become a citizen of the United States dies before he is actually naturalized the widow and minor children of such alien may, by complying with the other provisions of this act, be naturalized without making any declaration of intention.*"

## Section 8 of the act (section 4364) provides:

"That no alien shall hereafter be naturalized or admitted as a citizen of the United States who cannot speak the English language: Provided, that this requirement shall not apply to aliens who are physically unable to comply therewith, if they are otherwise qualified to become citizens of the United States: And provided further, *that the requirements of this section shall not apply to any alien who has prior to the passage of this act declared his intention to become a citizen of the United States in conformity with the law in force at the date of making such declaration*: Provided further, that the requirements of section eight shall not apply to aliens who shall hereafter declare their intention to become citizens and who shall make homestead entries upon the public lands of the United States and comply in all respects with the laws providing for homestead entries on such lands."

## Section 26 (section 4381) provides:

"That sections twenty-one hundred and sixty-five, twenty-one hundred and sixty-seven, twenty-one hundred and sixty-eight, twenty-one hundred and seventy-three, of the Revised Statutes of the United States of America, and section thirty-nine of chapter one thousand and twelve of the Statutes at Large of the United States of America for the year nineteen hundred and three, and all acts or parts of acts inconsistent with or repugnant to the provisions of this act are hereby repealed."

## Section 27 (section 4382) provides:

"That substantially the following forms shall be used in the proceedings to which they relate:

"Declaration of Intention.

"*(Invalid for all purposes seven years after the date hereof)*.

"————, ss.

"I, ————, aged ———— years, occupation ————, do declare on oath (affirm) that my personal description is: Color ————, complexion ————, height ————, weight ————, color of hair ————, color of eyes ————, other visible distinctive marks ————. I was born in ———— on the ———— day of ————, Anno Domini ————. I now reside at ————. I emigrated to the United States of America from ———— on the vessel ————. My last foreign residence was ————. It is my bona fide intention to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly to ————, of which I am now a citizen (subject). I arrived at the (port) of ———— in the state (territory or district) of ———— on or about the ———— day of ————, Anno Domini ————; I am not an anarchist; I am not a polygamist nor a believer in the practice of polygamy; and it is my intention in good faith to become a citizen of the United States of America and to permanently reside therein. So help me God.

"(Original signature of declarant) ————.

"Subscribed and sworn to (affirmed) before me this ———— day of ————, Anno Domini ————.

————.

"[L. S.] (Official Character of Attestor.)"

The repealing clause of the Naturalization Act leaves untouched section 2174 of the Revised Statutes, which is as follows:

"Every seaman, being a foreigner, who declares his intention of becoming a citizen of the United States in any competent court, and shall have served three years on board of a merchant vessel of the United States subsequent to the date of such declaration, may, on his application to any competent court, and the production of his certificate of discharge and good conduct during that time, together with the certificate of his declaration of intention to become a citizen, be admitted a citizen of the United States; and every seaman, being a foreigner, shall, after his declaration of intention to become a citizen of the United States, and after he shall have served such three years, be deemed a citizen of the United States for the purpose of manning and serving on board any merchant vessel of the United States, anything to the contrary in any act of Congress notwithstanding; but such seaman shall, for all purposes of protection as an American citizen, be deemed such, after the filing of his declaration of intention to become such citizen."

It is vain to search for anything in the Naturalization Law which *expressly* invalidates a declaration of intention made prior to the act at any future time. It seems unfortunate that the courts are not uniform in holding that there is nothing in the act which *impliedly* invalidates such certificates. The best expression of the alignment of the decisions in this regard is to be found in the brief opinion of the Circuit Court of Appeals of the Second Circuit in Yunghauss v. United States, 218 Fed. 168. That decision is an affirmance of the decision of the District Court for the Southern District of New York in Re Yunghauss, 210 Fed. 545. Those cases adopt the construction that the act shows by implication "that the Congress did not intend that old applicants could wait for a longer period than new applicants within which to file the petition." The lower court recognized that a decision invalidating old declarations "will involve the status of a considerable number of aliens." The Court of Appeals holds:

"In effect the act says to the alien who has made his declaration prior to 1906: 'Your declaration is in all respects valid, but if you wish to become a citizen you cannot delay your application for a period of over seven years from the passage of the act.'"

This court has already expressed its views against such a construction of the act in the case of Eichhorst v. Lindsey, 209 Fed. 708, resting more particularly upon the fundamental principle that an act of a legislative body should not be construed as retroactive, unless the language employed expresses a contrary intention in unequivocal terms. The words of Mr. Justice Paterson in United States v. Heth, 3 Cranch, 413, 2 L. Ed. 479, have often been quoted with approval:

"Words in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied."

That language seems specially applicable in the consideration of the present question. It is unnecessary to again make reference to the language italicized by the court at the end of the first and the beginning of the second paragraphs of section 4 of the act, because that language has been under consideration in the Eichhorst Case, and in the case of In re Anderson (decided by the District Court for the Western District of Texas) 214 Fed. 662. The language at the close of the second paragraph of section 4, relieving the alien from signing the petition in his own handwriting, if he shall have filed his declaration before the passage of the act, seems to this court to be an important feature in the act, as showing the intention not to interfere with existing declarations in any respect, and not to interfere with any status acquired by an alien by reason of a former declaration. Additional force to that position is found in the language at the beginning of the sixth paragraph of section 4, which permits the widow and minor children of an alien, who has declared his intention to become a citizen, of becoming naturalized without making any declaration of intention. Can it be supposed that Congress intended a seven-year limitation as against the widow and minor children who rely upon the declaration of the husband and father? Is it to be deemed, from that language, that Congress intended that the declaration by the husband would become invalid after seven years, and that the widow and minor children, perhaps after reaching majority, should make a new declaration of intention and use the same within seven years? One construction seems to be as reasonable with respect to the widow and minors as with respect to others who rely upon their own declarations.

Again, the act in section 3 prohibits the courts from admitting to citizenship thereafter any alien who cannot speak the English language, with the proviso, however, that such requirement should not apply to an alien who prior to the passage of the act had declared his intention to become a citizen of the United States in conformity with the law in force at the date of making such declaration. That proviso contains no limitation as to time. On the contrary, it expressly refers to the law in force at the date of making such declaration. The use of the word "date" in the proviso has reference, not to the existing law, or to any particular act of Congress. It seems from its very language to mean that irrespective of lapse of time, and irrespective of the age of the applicant, he shall be admitted, although he cannot sign his petition in his own handwriting, if he should have conformed, at any previous period, with the act of Congress in force relating to declarations of

intention. The man who cannot write, and yet had made his declaration under existing law, had a status given him by the United States. It was the right to become a citizen upon his compliance with the laws in force at the time, upon making his application to the court at some indefinite time, when he deemed himself to have sufficient knowledge of the Constitution and government to satisfy the court as to his attachment thereto. That status has been removed by the act of 1906, if the conclusions reached in the Yunghauss Case are sound. In vain would such a one search for notice to him of such a change in his status.

Referring now to section 27, wherein is set forth the form of the declaration of intention, so far as this court is informed the present Naturalization Law is the first to set forth a form of the declaration of intention, and a statement of the matters which should be set forth therein. There seems to have been no provision in previous laws for indicating the color, complexion, height, weight, color of hair, color of eyes, or other visible marks which will identify the alien. Under the title "Declaration of Intention" appear the words, "Invalid for all purposes seven years after the date hereof." There does not seem to be anything in that language which can relate to any other declaration of intention than the one prescribed in the act itself. That very language, when read in connection with the proviso in the first paragraph of section 4, "that no alien who, in conformity with the law in force at the date of his declaration, has declared his intention to become a citizen of the United States shall be required to renew such declaration," seems to indicate that the seven-year limitation is applicable only under the new act and not to declarations made prior thereto.

Referring now to section 2174 of the Revised Statutes, which, as we have seen, is not repealed, we find it gives a status to foreign seamen, who have declared their intention to become citizens, provided they shall have served three years on board of a merchant vessel of the United States subsequent to the date of such declaration. By that act, after such declaration and such service, a seaman may be admitted to citizenship; and also, after such declaration and during such service, he shall, for all purposes of protection as an American citizen, be deemed such. There is no limitation in said section of the Revised Statutes after which such declaration shall cease to avail the seaman of the privileges therein given him. That section must be deemed to have been intended by Congress, when it passed the Naturalization Act, to be and remain in full force, because Congress repealed by express words many other sections, among them 2173.

In every aspect, the Naturalization Act seems to have been intended to preserve existing conditions, except where by express words they were changed. By so much the less, therefore, did Congress intend to change the status of aliens who had declared their intention, by mere inference. This view seems strengthened when we turn from the consideration of the status of the alien who had made his declaration previous to the act of 1906, viewing him in the light of one to whom a revocable privilege had been granted by the sovereign, to a considera-

tion of the status of such alien to whom a property or other legal right had been granted by the United States, or by the several states. Congress by section 2319 of the Revised Statutes (Comp. St. 1913, § 4614) declared all valuable mineral deposits in lands belonging to the United States to be open to occupation and purchase, not only by citizens of the United States, but by "those who have declared their intention to become such." In the second edition of the American & English Ency. of Law, in the article upon "Elections," we find this:

"In some of the states, however, an alien having the other qualifications may be an elector, if he shall have resided in the state for a certain specified period immediately preceding the election, and shall have declared his intention to become a citizen of the United States, conformably to the laws of the United States on the subject of naturalization."

The footnote refers to the Constitutions of the states of Alabama, Arkansas, Arizona, Colorado, Dakota, Florida, Indiana, Kansas, Louisiana, Minnesota, Missouri, Montana, Nebraska, Oregon, Texas, Wisconsin, and Wyoming. Doubtless that list of states is not correct today, in view of constitutional changes in many of them; but it was admitted by the representative of the government in this case that at the time of the passage of the Naturalization Law there were at least nine states in which aliens, who had declared their intention to become citizens of the United States and possessing other qualifications, were deemed qualified electors in such states. Congress must have known at the time of the passage of the Naturalization Law of these rights possessed by aliens who before that time had made their declaration of intention to become citizens. Had the purpose been to invalidate existing certificates after a lapse of seven years from the passage of the act, Congress would have felt impelled to have so enacted in plain terms.

It is proper also to consider that the act itself contained the provision that it should not take effect or be in force for 90 days after its passage, except with respect to certain sections not material to the present discussion. This court cannot consider the Naturalization Act as in the nature of a statute of limitations, and therefore cannot apply the principles of Sohn v. Waterson, 84 U. S. (17 Wall.) 596, 21 L. Ed. 737, other than as an additional emphasis of the words of Mr. Justice Paterson hereinabove quoted. The proceeding ending in an adjudication that the applicant is qualified for citizenship is begun by a declaration of intention, and therefore the construction fixing a limitation upon a right of action would not apply.

In view of the foregoing considerations, the following conclusions must be reached:

In the case of Stefan Lengyel, who was unable to sign his declaration in his own handwriting, there was no illegality in admitting him to citizenship.

In the case of Joshua Morris, who filed his declaration on the 11th day of September, 1906, before the Naturalization Act became in force, and who filed his petition for citizenship on the 23d of December, 1913, there was no illegality in admitting him to citizenship.

In the case of August Glantz, who relied upon the declaration of his deceased father, there was no illegality in admitting him to citizenship.

For the reasons hereinbefore given, the bill in each case must be dismissed.